**MRS. W., Mrs. B., and Connecticut Legal Services, Plaintiffs–Appellants,**

v.

**Gerald N. TIROZZI, James Szerejko, A. Walter Esdaile, Warren Foley, Abraham Glassman, Rita L. Hendel, Walter Mannix, Julia S. Rankin, Norma Glasgow and Connecticut State Board of Education, Defendants–Appellees.**

**No. 1151, Docket 87–7163.**

United States Court of Appeals, Second Circuit.

Argued May 20, 1987.

Decided Nov. 4, 1987.

Douglas M. Crockett, Connecticut Legal Services, Willimantic, Conn. (Sharon Langer, Connecticut Legal Services, New Britain, Conn., Dennis J. O'Brien, Connecticut Legal Services, Willimantic, Conn., of counsel), for plaintiffs-appellants.

John R. Whelan, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., Robert W. Garvey, Asst. Atty. Gen., Hartford, Conn., of counsel), for defendants-appellees.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiffs Connecticut Legal Services, Mrs. W., Mrs. B., and their children appeal from the February 2, 1987 judgment of the United States District Court for the District of Connecticut (Blumenfeld, J.), dismissing their 42 U.S.C. § 1983 civil rights action and granting judgment on the pleadings for defendants, the Connecticut State Board of Education, Gerald N. Tirozzi, the Connecticut Commissioner of Education, and the members of the Connecticut State Board of Education. Two principal questions are raised on this appeal. First, may a private right of action under 42 U.S.C. § 1983 be maintained for a claimed violation of the Education of the Handicapped Act, 20 U.S.C.A. §§ 1400–1485 (West 1978 & Supp.1987)? And, must the administrative remedies provided under § 1415(b)(2) and (c) of that Act and 34 C.F.R. §§ 76.1–76.902 (1986) be exhausted, or their exhaustion excused, prior to filing this civil rights action? We hold that the Act provides for a private right of action and that exhaustion requirements do not preclude this civil action.

## BACKGROUND

### I  *The Statutory Framework*

Before considering the merits of this appeal, it is helpful to discuss briefly the Education of the Handicapped Act, 20 U.S.C.A. §§ 1400–1485 (West 1978 & Supp. 1987), and its implementation in Connecticut. The Education of the Handicapped Act (EHA or Act) begins with findings that there were in 1970 more than 8 million handicapped children in the United States, most of whom had special educational needs not being fully met. § 1400(b)(1)–(3). The Act is a comprehensive scheme established by Congress to aid the states in meeting the educational needs of handicapped children by providing them with a "free appropriate public education." § 1400(c); S.Rep. No. 168, 94th Cong., 1st Sess. 13, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1437 (1975 Senate Report). The Act also attempts to relieve the financial burdens placed on individual states in their efforts to provide such education for handicapped children. §§ 1400(b)(8)–(9), (c). To achieve these goals, it conditions federal financial assistance on the state's development of a policy and plan that "assures all handicapped chil-

dren the right to a free appropriate public education." § 1412(1).

Congress emphasized that the EHA is not simply a funding statute. The primary responsibility for providing the required education rests with the states. 1975 Senate Report, *supra*, at 22. To ensure its discharge, there is set forth an enforceable substantive right to "a free appropriate public education." § 1400(c); *see Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176, 191–204, 102 S.Ct. 3034, 3043–50, 73 L.Ed.2d 690 (1982). Elaborate procedural requirements are imposed on the states receiving federal financial aid to safeguard that right. § 1415; *see Rowley*, 458 U.S. at 182, 102 S.Ct. at 3038. The Act contains a strong focus on involving the handicapped child's parents, teacher, and a representative of the local educational agency in the formulation of an "individualized education program" (IEP) tailored to the particular needs of the handicapped student. §§ 1401(18)–(19), 1415(b). Each child's IEP must be reviewed—and, when necessary, revised—at least annually. § 1414(a)(5). Parents of handicapped children must be notified in writing of any proposed change in their child's IEP, § 1415(b)(1)(C)(i), and be given an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," § 1415(b)(1)(E).

Complaints are reviewed at an "impartial due process hearing" conducted by the state or local education agency. § 1415(b)(2). A final decision must be reached no later than 45 days after the receipt of a hearing request. 34 C.F.R. § 300.512(a)(1) (1986). If a hearing is conducted at the local level, an appeal may be taken to a state agency which must render a final decision within 30 days. § 1415(c); 34 C.F.R. § 300.512(b)(1). An aggrieved party may appeal to federal or state court, which is empowered to grant appropriate relief. § 1415(e)(2); 34 C.F.R. § 300.511.

In addition to the procedural safeguards listed in 20 U.S.C.A. § 1415, the Education Division General Administrative Regulations, 34 C.F.R. §§ 76.1–76.902 (EDGAR), set forth an administrative mechanism for assuring that a state complies with the provisions of the EHA. Specifically, 34 C.F.R. § 76.780 requires a state to adopt a written complaint resolution procedure (CRP) for receiving and resolving complaints that the state or a local agency is violating the EHA or its regulations. The state must include in its CRP a 60–day time limit within which to carry out an investigation and resolve a complaint. § 76.781(a). The state must also inform complainants that they have the right to request a review of the state's final decision by the United States Secretary of Education (Secretary). § 76.781(c).

Prior to 1986 no express private right of action was found in the EHA. *Smith v. Robinson*, 468 U.S. 992, 1013, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984) (EHA is exclusive avenue through which handicapped children can pursue claims against state educational service providers). In response to the Supreme Court's decision in *Smith*, Congress in 1986 added § 1415(f) to the EHA, as part of the Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 1986 U.S.Code Cong. & Admin. News (100 Stat.) 796. The new § 1415(f) states that the provisions of the EHA do not provide the exclusive avenue for redress available to handicapped children, and that § 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, and other constitutional or statutory provisions may be used as remedies to enforce EHA educational rights, subject to the Act's existing exhaustion requirements.

Connecticut submits plans annually for state administered programs of special education and related services and receives federal grants because as a participating state it has enacted legislation to implement the EHA's requirements. *See* Conn. Gen.Stat.Ann. § 10–76h (West 1986). Under such legislation, parents may request review of the diagnosis, evaluation of educational programs, exemption or exclusion of their child from school privileges, or any other matter concerning the child's right to special education. § 10–76h(a). A hearing must be scheduled and a decision rendered

within 45 days of the request for review. § 10–76h(b). Appeals from these decisions are taken in accordance with Connecticut's Administrative Procedures Act, § 4–183; § 10–76h(e)(3). In lieu of an administrative review, the parties may agree to refer the matter to a state mediator. § 10–76h(c)(2).

The State Plan for fiscal years 1981–83 also included a Connecticut State Department of Education complaint resolution procedure. Thereafter, this procedure was revised and then deleted from the State Plan in 1984. At present there appears to be no complaint resolution procedure in Connecticut's State Plan. With this general overview in mind, we turn to the facts of this case.

## II *Facts*

On May 7, 1985 plaintiffs, Mrs. W. and Mrs. B., parents of handicapped children, and Connecticut Legal Services (Legal Services), a nonprofit corporation providing legal services, commenced this civil rights action pursuant to 42 U.S.C. § 1983 (1982), on their own behalf and on behalf of others similarly situated, against the Connecticut State Board of Education, Gerald N. Tirozzi, the Connecticut Commissioner of Education, and the members of the Connecticut State Board of Education (collectively defendants or the State Board). Plaintiffs' complaint alleges that the defendants' failure to make bona fide attempts to resolve their complaints against the Bridgeport Board of Education and the Connecticut Department of Children and Youth Services and to implement fully and conduct an informal CRP violates the Act, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), and the Due Process and Equal Protection clauses of the Fourteenth Amendment. Because the plaintiffs' allegations focus on the two complaints filed by Legal Services with the State Board pursuant to its complaint resolution procedure for fiscal years 1981–83, we consider each of these complaints in detail.

### A. *The Bridgeport Board of Education Complaint*

On October 7, 1982 Legal Services filed a complaint with the State Board on behalf of Mrs. W., the mother of Diedre W., who has emotional, intellectual, and gross motor handicaps, and on behalf of Mrs. B., the mother of Nathan B., a retarded and autistic child, and in behalf of all those similarly situated against the Bridgeport Board of Education pursuant to Connecticut's complaint resolution procedure. The complaint was not limited to objections regarding the individualized educational programs of Diedre W. and Nathan B., but rather was directed at an alleged pattern and practice of the Bridgeport School Board regarding all handicapped children in its school system. It alleged that the school system had violated the Act by failing to provide both an adequate psychologist staff and to conduct triennial evaluations of handicapped children. The State Board responded that Diedre W. and Nathan B. had evaluations in excess of those required by special education mandates, and that school psychologists are not essential in order to meet special education evaluation mandates.

Plaintiffs contend that the State Board's response failed to comply with CRP requirements because the State Board neither established communication with plaintiffs during its investigation, nor provided them with an opportunity to present relevant information. Accordingly, Legal Services resubmitted the complaint and sent the State Board a letter further specifying the alleged inadequacies of the Bridgeport system. Plaintiffs claim that the State Board's second response was also insufficient because it neglected to address the Bridgeport School Board's alleged noncompliance with the EHA.

Plaintiffs also maintain that the State Board did not provide them with an opportunity to raise their systemwide complaints in a due process hearing pursuant to 20 U.S.C.A. § 1415(b)(2). After service of this complaint, the State Board issued a report finding that the Bridgeport School Board had violated the EHA in several respects, but the record does not reveal what remedial actions, if any, were ordered or taken.

### B. *The Department of Children and Youth Services Complaint*

On October 14, 1982 Legal Services filed a separate complaint with the State Board

pursuant to Connecticut's complaint resolution procedure against the Department of Children and Youth Services and that Department's Unified School District # 2. It brought the complaint as guardian *ad litem* for Dale V. and on behalf of all other handicapped children placed at Long Lane School, a residential correctional institution operated by the Department of Youth Services for adjudicated delinquents. The complaint raises several objections to the Department's operation of its Cady and Long Lane Schools. For example, it alleges that the Department of Youth Services violated the Act's requirements by failing to implement individualized education programs within 45 days of referral, by neglecting to evaluate and properly educate emotionally maladjusted children in its schools, and by changing a child's educational placement without notice and an opportunity for parents to exercise their due process rights under the EHA.

Plaintiffs claim that the State Board's answer to their complaint did not directly address the issues raised in it. That answer, they maintain, did not consider the alleged system-wide violations, but was limited to Dale V. and his school records. Plaintiffs further contend that the State Board disregarded CRP requirements by not establishing communication with complainants during its investigation and by exceeding the 60–day time limit for such response. *See* 34 C.F.R. § 76.781(a). Thus, Legal Services resubmitted the complaint along with a memorandum specifying the alleged inadequacies of defendants' answer. Plaintiffs contend that the State Board's reply failed to address their objections "in a meaningful way."

Before filing the October 14, 1982 complaint against the Department of Youth Services, Legal Services had earlier requested a due process hearing pursuant to 20 U.S.C.A. § 1415(b)(2) on behalf of Dale V. Over a year later, the State Board dismissed Dale V.'s request for a hearing on mootness grounds because he had been released from Long Lane School on parole. Plaintiffs also claim that the State Board generally has not afforded children at Long Lane School an opportunity for a hearing on matters related to special education. Moreover, plaintiffs stress, the few hearings that are available are not geared to address system-wide violations of the EHA.

### III   *The Proceedings Below*

As a result of what they perceived as inadequacies in Connecticut's treatment of their complaints, plaintiffs instituted this § 1983 action on May 7, 1985 requesting declaratory and injunctive relief. The complaint does not seek judicial review of the State Board's substantive decisions, but requests instead an injunction requiring defendants to formulate and implement adequate complaint resolution procedures.

Defendants moved for a judgment on the pleadings claiming that plaintiffs have no private right of action under § 1983. A magistrate recommended that the motion be granted on the grounds that plaintiffs had failed to invoke the EHA's due process procedures, defendants had a complaint resolution procedure in compliance with EDGAR regulations, and plaintiffs had failed to exhaust the administrative remedies set forth in the Act. The district court ruled that since the EHA is a comprehensive remedial statute, no private right of action lies against defendants. It adopted the magistrate's recommended ruling, granted defendants' motion, and dismissed plaintiffs' complaint. This appeal followed. We reverse and remand for further proceedings on the merits.

### DISCUSSION

#### I *Private Right of Action*

Plaintiffs brought their § 1983 action based on alleged violations of the Act, of § 504 of the Rehabilitation Act of 1973, and of the Due Process and Equal Protection clauses. Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (1982). It is well settled that § 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). A § 1983 cause of action may be used to remedy constitutional and federal statutory violations by state agents. *Maine v. Thiboutot,* 448 U.S. 1, 5–6, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980) (§ 1983 action available against state for alleged Social Security Act violations).

■ The availability of § 1983 federal jurisdiction to enforce federal statutory violations is limited by two exceptions. No such action is available when Congress has foreclosed enforcement of the statute in the statute itself, or when a statutory remedial scheme is so comprehensive that there is an implication that it provides the exclusive remedy foreclosing all other remedies *Wright v. City of Roanoke Redev. & Housing Auth.,* — U.S. —, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 22, 101 S.Ct. 1531, 1542, 67 L.Ed.2d 694 (1981). Of course, even the existence of a comprehensive remedial scheme will not bar resort to § 1983, if Congress states that it did not want its enactment construed to restrict or limit the remedies otherwise available. *See Smith v. Robinson,* 468 U.S. 992, 1012 n. 16, 104 S.Ct. 3457, 3469 n. 16 (1984).

Applying these rules to the EHA's extensive remedial scheme, the Supreme Court concluded in 1984 that the Act was the exclusive avenue through which a plaintiff may assert an EHA, a § 504, or an equal protection claim to a publicly financed special education. *Smith,* 468 U.S. at 1013, 1019, 104 S.Ct. at 3469, 3472. Accordingly,

it held that a plaintiff is precluded from resorting to § 1983 cause of action or obtaining attorneys' fees pursuant to 42 U.S.C. § 1988 based on such claims. *Id.* at 1009–13, 104 S.Ct. at 3467–69. The Court reasoned that the comprehensiveness and detail with which the Act addressed the provision of special education for handicapped children indicated that Congress wanted to limit remedies to those explicitly provided for. *Id.* Understandably, the district court adopted this position in the instant case and held that the EHA's comprehensive nature precluded present plaintiffs from instituting a private right of action under § 1983.

■ But, as noted, Congress amended the EHA in 1986 and enacted the Handicapped Children's Protection Act of 1986. In section 3 of that Act, Congress added the following new subsection to 20 U.S.C.A. § 1415:

(f) Effect on other laws

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [ ], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(f) (West Supp. 1987). By enacting this nonexclusivity provision Congress expressly overruled *Smith. See Board of Educ. of E. Windsor Regional School Dist. v. Diamond,* 808 F.2d 987, 994–95 (3d Cir.1986) (Congress overruled *Smith* ); *Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986) (same); *Silano v. Tirozzi,* 651 F.Supp. 1021, 1024 (D. Conn. 1987) (same).

Congress stated that § 1415(f) was designed to "reestablish statutory rights repealed by the U.S. Supreme Court in *Smith*

*v. Robinson*" and to "reaffirm, in light of this decision, the viability of section 504, 42 U.S.C. 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985) (hereinafter 1985 House Report); *see also id.* at 3 (need for legislation), 6 (effect on *Smith*); S.Rep. No. 112, 99th Cong., 2d Sess. 2–3, *reprinted in* 1986 U.S. Code Cong. & Admin. News 1798, 1799–1800 (discussing *Smith*) (1986 Senate Report).

Congress stressed that its original aim had been to allow resort to other judicial remedies for claims based on the EHA. *See* 1985 House Report, *supra,* at 7; 1986 Senate Report, *supra,* at 15; *see also Handicapped Children's Protection Act of 1985: Hearings on S.415 Before the Subcomm. on the Handicapped of the Senate Comm. on Labor and Human Resources,* 99th Cong., 1st Sess. 2 (1985) (opening statement of Senator Weicker) (Section 1415(f) "is intended to be a simple restoration and clarification of congressional intent.") Moreover, Congress specifically identified § 1983, § 504 of the Rehabilitation Act of 1973, and the Constitution as other sources of rights and remedies in special education cases. *See* 20 U.S.C. § 1415(f); H.R.Conf.Rep. No. 687, 99th Cong., 2d Sess. 7, *reprinted in* 1986 U.S. Code Cong. & Admin.News 1807, 1809. ("It is the conferees' intent that actions brought under 42 U.S.C. 1983 are governed by this provision."); 1985 House Report, *supra,* at 3 ("Section 1983 prohibits, among other things, an agency acting under color of state law from abridging a handicapped person's rights under the Constitution.")

Nevertheless, we must consider the fact that the present action was filed in 1985, one year before the 1986 Amendment to the EHA. Since Chief Justice Marshall's opinion in *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), it has been the duty of courts to decide the issues in a case consistent with the directives of a statute enacted subsequent to the judgment appealed from. *Id.* 5 U.S. (1 Cranch) at 110. That is, a court is required to apply the law in effect when it renders a decision, absent a congressional directive to the contrary. *See Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974); *Carpenter v. Wabash Ry. Co.,* 309 U.S. 23, 27, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1940).

The 1986 amendment in the present case simply codifies a congressional purpose long in place which Congress believed the Supreme Court had misinterpreted. *See* 1985 House Report, *supra,* at 4. ("In sum, since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983."); 1986 Senate Report, *supra,* at 2; *Diamond,* 808 F.2d at 995–96; *Fontenot,* 806 F.2d at 1223 ("Congress read the Supreme Court's decision in *Smith* and acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent.") (citation omitted).

In light of this clear legislative history, we hold that parents are entitled to bring a § 1983 action based on alleged violations of the EHA or the Due Process and Equal Protection clauses of the federal Constitution. Thus, the district court erred when it dismissed plaintiffs' complaint on the ground that no private right of action could be maintained other than by way of an EHA suit. Plaintiffs may therefore pursue their § 1983 action.

## II *Other Grounds Urged for Affirmance*

The State Board argues that even were plaintiffs to have such a private right of action, we should nevertheless affirm the judgment on other grounds. First, it contends that plaintiffs failed to exhaust their administrative remedies under the Act by not raising their complaints against the Bridgeport School Board and the Department of Youth Services pursuant to § 1415(b) and (c), and by failing to file a complaint with the Secretary of Education for review of Connecticut's alleged noncompliance. Second, it urges alternatively that it fully complied with the requirements of the Act. And, finally, it argues on ap-

peal that the doctrine of primary jurisdiction forecloses consideration by the courts. We analyze each contention in turn.

A. *Exhaustion of Administrative Remedies*

1. *Availability of the Due Process Hearings*

■ Although § 1415(f) provides that the EHA does not affect the applicability of other federal laws related to special education, it also clearly states that parents may not circumvent its due process procedures. Specifically, the section requires that "before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C.A. § 1415(f) (West Supp. 1987). In other words, when parents choose to file suit under another law that protects the rights of handicapped children—and the suit could have been filed under the EHA—they are first required to exhaust the EHA's remedies to the same extent as if the suit had been filed originally under the EHA's provisions. 1986 Senate Report, *supra*, at 15; 1985 House Report, *supra*, at 7.

In analyzing exhaustion under the EHA, we begin by observing that the Act's procedural due process machinery requires that complainants file a complaint with the educational service provider and appeal to the state educational agency before filing a civil action in an appropriate state or federal court. § 1415(a)-(e). Congress in adding § 1415(f) confirmed the clear language of § 1415(a)-(e), only overruling the *Smith* holding that a § 1983 action could not be used supplementally to enforce the Act's substantive rights. Therefore, § 1415(a)-(e) remedies must be exhausted prior to instituting a civil action in federal court pursuant to § 1415(e) or a § 1983 action authorized by § 1415(f). The Act's exhaustion requirements are the same for 42 U.S.C. § 1983 or 20 U.S.C. § 1415(e) actions and were not eliminated or cut-back by the

Handicapped Children's Protection Act of 1986. Thus, pre–1986 judicial constructions of the EHA's exhaustion requirements still remain viable.

Exhaustion is not an inflexible rule. Under certain circumstances, not all § 1415(a)-(e) administrative remedies must be exhausted prior to invoking a civil action under § 1415(e). *See Quackenbush v. Johnson City School Dist.*, 716 F.2d 141, 147–48 (2d Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984) (allowing § 1983 action when state directly responsible for plaintiff's failure to exhaust administrative remedies); *see generally Cain v. Yukon Pub. Schools*, 775 F.2d 15, 20 (10th Cir.1985) (noting importance of notification requirements); *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 634 (4th Cir.1985) (same). Congress specified the situations in which before filing suit, exhaustion of the due process and review procedures set forth in § 1415(b)(2) and (c) is not a prerequisite. *See* 1986 Senate Report, *supra*, at 15; 1985 House Report, *supra*, at 7; *see also Doe v. Gonzales*, 793 F.2d 1470, 1490 (9th Cir.1986) (exhaustion not required where administrative relief would be futile or inadequate), *cert. granted on other grounds*, — U.S. —, 107 S. Ct. 1284, 94 L.Ed.2d 142 (1987). These situations include complaints that:

> (1) it would be futile to use the due process procedures ...; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)....

1985 House Report, *supra*, at 7; *see* 1986 Senate Report, *supra*, at 15 (exhaustion excused if not required under EHA); *see also J.G. v. Board of Educ. of the Rochester City School Dist.*, 830 F.2d 444, 447 (2d Cir.1987) (§ 1988 attorneys' fees allowed in § 1983 action when plaintiffs allege deprivation of EHA due process rights and inadequate administrative remedies); *Manecke v. School Bd. of Pinellas County*, 762 F.2d 912, 918–19 (11th Cir.1985)

(§ 1983 action available to redress denial of access to EHA procedural safeguards), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d. 784 (1986); *Quackenbush,* 716 F.2d at 148 (permitting § 1983 action to plaintiff denied § 1415's procedural safeguards); *Jose P. v. Ambach,* 669 F.2d 865, 869–70 (2d Cir.1982) (not requiring exhaustion of administrative remedies in complex class action alleging systematic EHA violations).

■ Plaintiffs claim to fall within these statutory exceptions. Their complaint alleges a pattern and practice of systematic EHA violations unable to be addressed at the due process hearings provided in Connecticut. They allege that this brings them within the situation described above in (2) —a complaint alleging an agency adopted policy that is contrary to law. Plaintiffs also contend that they are unlikely to receive adequate relief because a due process hearing officer lacks the authority to effectuate class action and system-wide relief. As a consequence, plaintiffs argue, they also fit the situation described in (3).

Reviewing an appeal from a judgment granted on the pleadings, an appellate court must assume the truth of all facts pleaded by the party opposing the motion and read the record in a light most favorable to that party. *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985). Accepting the facts pleaded by plaintiffs as true and drawing all inferences in their favor, plaintiffs have pleaded an entitlement to an exemption from exhaustion of administrative remedies sufficient to overcome a motion for judgment on the pleadings.

2. *Review by the Secretary of Education*

■ The district court also ruled that plaintiffs failed to exhaust all available administrative remedies under EDGAR by not requesting the Secretary of Education to review the final complaint resolution procedure decision of the State. We hold that review by the Secretary is not a necessary step prior to commencing this § 1983 action.

The State Board argues that once the CRP apparatus is invoked it must be exhausted prior to commencing a § 1983 civil rights action. Defendants concede that the Secretary's review would not involve the complaining party to the same degree as do § 1415(a)-(d) due process hearings. Defendants also recognize that the relief that such review can provide is limited. These two characteristics of the Secretary's review form the core of Legal Services' argument against requiring exhaustion of this remedy prior to commencing this action.

Specifically, Legal Services claims that review by the Secretary is inadequate because there is no opportunity to introduce evidence or cross-examine witnesses, and the only relief afforded by such review is the withholding of federal funds. Additionally, Legal Services argues that the applicable complaint resolution procedure did not state that review by the Secretary was available. Notification of the availability of review by the Secretary, according to plaintiffs, is required under 34 C.F.R. § 76.781(c).

EDGAR regulations mandate that a state must include in its CRP the right to request the Secretary to review a state's final decision.[1] Briefly, the CRP apparatus is as follows. The state educational authorities have authority to provide the full relief requested here by instituting a new CRP plan, thereby addressing the individual and system-wide concerns of petitioners. The Secretary's authority, in contrast, extends only to withholding federal funding from a state found to be in noncompliance with § 1412 or § 1413. 20 U.S.C.A. § 1416 (West 1978 & Supp. 1987). Further, the

---

**1.** 34 C.F.R. § 76.781(c) (1986). The CRP in Connecticut for 1981–1983 contained such a provision. After 1983, the provision was deleted from the state plan. The district court made no findings as to which state plan controls in this case. The earlier plan was in effect when the initial complaints were filed, and the latter one when the state finally resolved them. The magistrate's recommended ruling concluded that the plaintiffs were not denied access to the CRP because the state CRP contained the required EDGAR procedures at the time plaintiffs filed their complaint.

Secretary's decision may be challenged only by a state. *Id.* § 1416(b)(1).

Although the Secretary's statutory authority encompasses only the remedy of withholding funds, we recognize that review by the Secretary might be helpful in resolving the issue of the State Board's compliance with the complaint resolution scheme. Clearly, a state would prefer to convince the Secretary of its compliance with EDGAR and § 1415 or modify the state plan to ensure compliance rather than be subject to withholding of substantial federal funds. Even recognizing this possible effect of review by the Secretary, the fact remains that it would be contrary to plaintiffs' interests to petition for the withholding of federal funds from the State of Connecticut. Plaintiffs want Connecticut's handicapped education program implemented, not dismantled.

In evaluating whether exhaustion of CRP remedies is required, we commence analysis with the Act itself. Significantly, § 1415(f) does not specify, directly or by incorporating its legislative history, exhaustion of possible CRP remedies. In fact, research has unearthed no statute or regulation that requires exhaustion of CRP remedies prior to commencing a § 1983 action based on alleged EHA violations. Plainly, state administrative remedies must be exhausted when a federal statute so provides. Turning to the EHA caselaw, we note that the Supreme Court has never suggested that the CRP need to be invoked or exhausted prior to seeking federal court involvement in construing the EHA pursuant to § 1415. *See Smith,* 468 U.S. at 994–1021, 104 S.Ct. at 3459–73; *Rowley,* 458 U.S. at 177–210, 102 S.Ct. at 3035–53.

In light of the complete absence of a statutory directive or decisional law requiring CRP exhaustion prior to commencing an action under § 1415(e) or § 1983, we must rely on general principles concerning exhaustion of state administrative remedies in § 1983 actions. The Supreme Court has held that exhaustion of state judicial or administrative remedies is not required when federal claims are premised on § 1983. *Steffel v. Thompson,* 415 U.S.

452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974). This is especially true when the state administrative remedy is inadequate. *McNeese v. Board of Educ. for Community Unit School Dist. 187,* 373 U.S. 668, 674–75, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). Resisting serious challenges to this view, the Supreme Court confronted the issue in 1982, and stated categorically that "exhaustion is not a prerequisite to an action under § 1983." *Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982).

Without evaluating the merits of the inadequacy claim here, we hold based on *Steffel* and *Patsy* that plaintiffs' § 1983 claims may not be barred at this stage of the litigation for failure to request review by the Secretary. Thus, the judgment appealed from may not be affirmed on defendants' alternative ground of non-exhaustion of EDGAR remedies.

## B. *Alleged Compliance with the EHA*

Next, the State Board urges that it complied with the Act, its implementing regulations, and particularly with CRP requirements. Because the district court granted judgment on the pleadings, we have neither a record nor findings of fact that would permit intelligent review of this issue. Accordingly, we remand the question of the State Board's compliance to the district court for its consideration and determination.

## C. *Primary Jurisdiction*

Finally, defendants assert for the first time on appeal that the doctrine of primary jurisdiction provides an alternative basis to dismiss plaintiffs' § 1983 action. This discretionary doctrine potentially applies when federal courts have original jurisdiction to hear the claim and the claim requires the resolution of issues placed within the special competence of an administrative body. *United States v. Western Pac. Ry. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The doctrine is used to fix forum priority when the courts and an administrative agency have

concurrent jurisdiction over an issue. *Far E. Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952).

An argument by a state defendant that § 504 of the Rehabilitation Act of 1973 should first be construed by the United States Office of Civil Rights has been rejected. *See, e.g., New Mexico Ass'n for Retarded Citizens v. New Mexico,* 678 F.2d 847, 851 (10th Cir.1982). The doctrine has never been invoked so far as we can ascertain to prevent a federal court from construing claims under the EHA. In fact, courts seldom defer to an administrative agency when the issue involved is purely a legal question not involving either administrative experience or expertise. *General Elec. Co. v. MV Nedlloyd,* 817 F.2d 1022, 1026, 1027–28 (2d Cir.1987). Such is the circumstance in the instant case where the principal questions are whether the provisions of the EHA provide a private right of action and whether the other remedies under that Act have been exhausted. These are legal questions properly ruled upon in a judicial forum in the first instance. Hence, the doctrine of primary jurisdiction provides no basis for affirming the dismissal of plaintiffs' § 1983 claims.

## CONCLUSION

In sum, the thrust of the Congressional enactment allows parents to pursue claimed EHA violations through § 1983, § 504 of the Rehabilitation Act of 1973, and constitutional provisions. Exhaustion of EHA administrative remedies ordinarily required under § 1415(b)(2) and (c) is excused in the instant case because the pleadings indicate that defendants refused to consider and resolve complaints of system-wide violations of the EHA. We do not address the sufficiency or the merits of plaintiffs' claims. The judgment is reversed and the case is remanded to the district court for further proceedings on the merits consistent with this opinion.

Reversed and remanded.