UPPER VALLEY ASSOCIATION FOR HANDICAPPED CITIZENS; Winnie Pineo; and Michelle VanNamee; on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Richard MILLS, individually and in his capacity as Commissioner of the Vermont Department of Education; and Members of the Vermont State Board of Education, individually and in their official capacities, Defendants.

No. 2:94–CV–320.

United States District Court,
D. Vermont.

May 1, 1996.

Olcott Whitman Smith, Kochman & Smith, Burlington, VT, for Upper Valley Association for Handicapped Citizens, Winnie Pineo, Michelle VanNamee.

Paul Carl Fassler, Vermont Department of Education, Montpelier, VT, Geoffrey A. Yudien, Vermont Attorney General's Office, Montpelier, VT, for Richard Mills and Members of the Vermont State Board of Education.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a civil rights action, pursuant to 42 U.S.C. § 1983, brought on behalf of children with disabilities, their families and supportive organizations [1] for alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.* There are pendent state law claims as well.

On August 28, 1995, Defendants moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b). Plaintiffs oppose this motion. On November 15, 1995, Plaintiffs moved to amend their complaint. Defendants oppose this motion. For the reasons stated below, the Motion to Dismiss is DENIED and the Motion to Amend the Complaint is GRANTED.

---

**1.** Plaintiffs seek certification to bring this suit as a class action. That matter is currently pending before this Court and shall be addressed in a separate opinion.

## I. Factual Background

The facts set forth in the pleadings are limited. For purposes of deciding the instant matter, the Court assumes the following facts are true.[2] The lead Plaintiff in this action is the Upper Valley Association for Handicapped Citizens, ("Upper Valley"), an organization which provides informational, support and advocacy services to individuals with disabilities and others interested in disability-related issues. Plaintiff Winnie Pineo is the Program Director for Upper Valley. Plaintiff Michelle VanNamee is the parent of a child with a disability who is eligible to receive special education services.

On March 22, 1993, Upper Valley, on behalf of thirty-six of its members, wrote to the Board of Directors of the Blue Mountain Union School District ("District" or "local school district") alleging fifteen violations of the IDEA and Vermont special education regulations, including failure to implement appropriate individualized education programs ("IEPs") for its students. The IDEA guarantees a free appropriate public education to disabled students. 20 U.S.C. § 1412(1) (1990 & Supp.1996). It was created in response to a growing awareness that a majority of handicapped children in the United States "were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out'." H.R.Rep. No. 94–332, 94th Cong., 1st Sess. at 2 (1975) U.S.Code Cong. & Admin.News 1425, 1426.

Having received no response to their letter, Upper Valley, through Plaintiff Pineo, filed a complaint, incorporating the concerns set forth in the letter, with Defendant Mills, the Vermont Commissioner of Education on April 12, 1993. On April 26, 1993, the Vermont Department of Education ("Department"), through its counsel, dismissed seven counts of the complaint as not appropriate for review by the administrative complaint resolution procedure. The remaining counts were assigned to an investigation team ("Team") which was to recommend a course of action to Commissioner Mills by June 11, 1993. The Department predicted a final decision by the Commissioner no later than June 25, 1993.

Although there was continuing correspondence between Upper Valley and the Team from April of 1993 onward, the Team had not made its recommendations to the Commissioner when this action was filed on November 1, 1994. In their Amended Complaint, Plaintiffs allege four claims, all violations of rights secured by the IDEA or by Vermont's corresponding special education regulations. The essence of their complaint is a systemic failure on the part of Defendants to conform to the procedural requirements set forth in the IDEA and further developed in federal regulations, including what was previously known as the Education Department General Administrative Regulations ("EDGAR"). See 34 C.F.R. §§ 300.1 et seq. (1995). They specifically assert that Defendants have failed: 1) to develop and implement procedures to ensure the timely conduct of an investigation and the issuance of a written decision; 2) to develop procedures affording adequate relief to successful complainants; 3) to take affirmative action to correct instances of noncompliance with the IDEA; and 4) to develop and implement appropriate procedures in accordance with Vermont's special education regulations.

On December 20, 1994, the Team made its recommendations to Commissioner Mills. The following day the Commissioner adopted the Team's forty-five page report, which provided for corrective action with regard to some of Upper Valley's claims against the District. He also included a one page addendum, noting the breadth and severity of the problems within the District and directing additional monitoring.

## II. Discussion

### A. Overview of the Statutory Framework

Prior to addressing the merits of the respective motions, the Court finds it helpful to provide a brief overview of the IDEA. The IDEA carries out its objective of assuring a free appropriate public education to disabled students by conditioning federal financial as-

---

**2.** As discussed *infra*, the Court is granting Plaintiffs' Motion to Amend their Complaint. Thus, in reciting the facts, the Court shall rely on the Amended Complaint.

sistance on states' ability and willingness to establish the elaborate procedural requirements set forth in the Act. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 751 (2d Cir.1987). Pursuant to the IDEA and federal regulations, each state educational agency must submit a plan describing how it intends to develop, implement, and ensure compliance with these procedural requirements. 20 U.S.C. §§ 1412, 1413.

In Vermont the Commissioner of Education oversees all programs for disabled children administered by the state to make certain that they conform to the state standards, which include adherence to federal regulations. 20 U.S.C. § 1412(6); 16 V.S.A. § 2943 (1982 & Supp.1994). In addition to the Commissioner's supervisory authority, the members of the Vermont State Board of Education, also named as Defendants, are responsible for managing the Department of Education and the public school system in Vermont. 16 V.S.A. § 164. Collectively, the Defendants constitute a state educational agency within the meaning of 20 U.S.C. § 1401(a)(7).

The requisite procedural safeguards are enforced by two separate administrative mechanisms.[3] The first administrative process is designed to protect the integrity of the IEP process. It allows a complainant, usually a parent or guardian of a disabled child, to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(1)(E). Upon filing a complaint, the complainant is entitled to an impartial due process hearing conducted by the local school district or the state educational agency. *Id.* at § 1415(b)(2).

If the local school district conducts the due process hearing, the complainant may appeal to the state educational agency. *Id.* at § 1415(c). Any complainant dissatisfied with the state's decision may appeal by filing a civil action in federal or state court. *Id.* at § 1415(e). In the case at bar, Upper Valley, on behalf of parents and guardians of disabled students, approached the local school

district by presenting concerns about the quality of the educational services provided at the school. Upon receiving no response, they attempted to have their concerns addressed through the second administrative process, known as the complaint resolution procedure ("CRP").

The CRP is an administrative mechanism for ensuring state and local compliance with federally funded education programs, including the IDEA. It allows an interested party to file a complaint with the state educational agency alleging violations of the IDEA by a public agency, such as a local school district. 34 C.F.R. § 300.662. For example, in the case at bar, Upper Valley filed a complaint with Defendants against the local school district asserting, inter alia, a failure to evaluate student progress, a failure to implement IEPs as written, and a failure to include on the basic staffing team people knowledgeable about students' disabilities.

The filing and resolution of these complaints are handled in accordance with federal regulations, which must be adopted by the state. *See* 34 C.F.R. §§ 300.660–662. Federal regulations governing the implementation of the CRP by a state prescribe a maximum time limit of sixty calendar days after the filing of a complaint for the state educational agency to perform an investigation and issue a written decision. 34 C.F.R. § 300.661(a). An extension of this time limit is available only in exceptional circumstances. *Id.* at § 300.661(b). A complainant aggrieved by the state's disposition of the complaint may request a review of that decision by the Secretary of Education. *Id.* at § 300.661(d).

Vermont's CRP is set forth at § 2364.3.7 of the Vermont State Board of Education Regulations. It provides that the Team shall "present findings to the Commissioner in writing within 50 days from receipt of the complaint and the Commissioner shall render a decision and order within 10 days thereafter." In the case at bar, the Commissioner did not issue a decision until more than a

---

**3.** Throughout this opinion, the Court shall refer to the first type of administrative review as the due process hearing and the second as the CRP.

In some cases cited by the Court, the CRP is referred to as the EDGAR complaint process.

year and a half after the receipt of the complaint.

### B. *Motion to Amend the Complaint*

On November 15, 1995, Plaintiffs moved to amend their complaint pursuant to Fed. R.Civ.P. 15(a). Rule 15(a) provides that after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court … and leave shall be freely given when justice so requires." In their original complaint, Plaintiffs alleged that Defendants failed to formulate and implement an adequate CRP. The amended complaint [4] seeks enforcement of the Defendants' obligations to redress violations of the IDEA and Vermont special education regulations within the Blue Mountain Union School District made known to them through the CRP.

The procedural history of the case in this Court is as follows. Plaintiffs' original complaint was filed November 1, 1994. Defendants submitted an answer April 24, 1995. On August 2, 1995, Plaintiffs served interrogatories and requests for production of documents on Defendants. In a discovery certificate filed September 22, 1995, Defendants certified the service of their response to this discovery request. On December 18, 1995, Defendants served interrogatories and requests for production of documents on Plaintiffs. The same day the Court approved a joint discovery schedule postponing further discovery until a decision on the motion to dismiss had been rendered.

■ Whether to allow a party to amend is a matter within the discretion of the court. *United States v. Continental Illinois Nat. Bank and Trust*, 889 F.2d 1248, 1254 (2d Cir.1989). The seminal case on leave to amend, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), provides:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

371 U.S. at 182, 83 S.Ct. at 230.

Alleging material delay, undue prejudice and futility, Defendants oppose the motion to amend. First, Defendants contend that Plaintiffs' motion was made after an inordinate and unexplained delay. Second, Defendants argue that permitting the amendment would be prejudicial because discovery has commenced and the proposed claims raise new substantive issues. Finally, Defendants maintain that granting leave to amend is futile as the original complaint fails to state a claim for which relief may be granted. The Court finds these arguments unpersuasive.

■ Although Plaintiffs have not asserted an explanation for their delay in moving to amend the complaint, delay alone is an insufficient reason for denying a motion to amend. *Continental Illinois*, 889 F.2d at 1254. Rather it is a delay precipitating prejudice with which a court must concern itself. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). For example, in *Hillburn by Hillburn v. Maher*, 795 F.2d 252 (2d Cir.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987), the Second Circuit found that a denial of the motion to amend the complaint after the trial was not an abuse of discretion, because the defendants would have been prejudiced by not having had the opportunity to present evidence on the broader claims during trial.[5] In contradistinction, the Court finds there is no prejudice in allowing the amendment in the instant matter.

The reason is twofold. First, although there has been some discovery, it has been limited as a result of the parties' joint motion for postponement pending resolution of the motion to dismiss. The fact that at the time of filing their opposition to the motion to

---

**4.** The proposed new allegations appear as ¶¶ 3, 27, 31, and 42–44 of the Amended Complaint.

**5.** Likewise, Defendant cites *Cresswell v. Sullivan and Cromwell*, 922 F.2d 60, 72 (2d Cir.1990), *cert. denied*, 505 U.S. 1222, 112 S.Ct. 3036, 120

L.Ed.2d 905 (1992), in urging the Court to declare Plaintiffs' delay grounds for denying the amendment. Unlike the *Cresswell* defendant, however, the Defendants, here, will not suffer undue prejudice as a result of Plaintiffs' delay.

amend, Defendants had conducted no discovery, in conjunction with their subsequent agreement to the motion to postpone discovery makes Defendants' argument of prejudice on discovery grounds rather disingenuous. Clearly, this is not a case where the amendment is proposed on the eve of trial and would result in problems of proof. *State Teachers,* 654 F.2d at 856; *cf. Bradick v. Israel,* 377 F.2d 262 (2d Cir.1967), *cert. denied,* 389 U.S. 858, 88 S.Ct. 101, 19 L.Ed.2d 124 (1967).

Moreover, the Court finds that the original complaint provided adequate notice of the additional allegations made in the proposed amended complaint because they arise out of the same core of operative facts. *See Hanlin v. Mitchelson,* 794 F.2d 834, 841 (2d Cir. 1986); *State Teachers,* 654 F.2d at 856. All of the claims involve Defendants' failure to provide an adequate system for enforcing compliance by the school district with the IDEA. The new cause of action simply alleges another way in which Defendants violated 20 U.S.C. § 1412.[6]

■ Finally, although an amendment is not appropriate when the original complaint cannot survive a motion to dismiss, *see, e.g., Scala v. Sequor Group, Inc.,* No. 94–Civ.– 0449, 1995 WL 225625 at *5 (S.D.N.Y. April 14, 1995), the Court finds that both the original and amended claims state a cause of action at this stage of the proceedings, as discussed below. Thus, in accordance with the principle that leave to amend should be "freely given," the Court grants Plaintiffs' motion.

### C. *Motion to Dismiss*

■ Defendants argue two grounds for the dismissal of Plaintiffs' complaint. First, they contend that Plaintiffs have failed to exhaust their administrative remedies. Second, they assert that there is no private right of action for enforcing the CRP under § 1983. In deciding a motion to dismiss, the court assumes all factual allegations in the complaint are true and draws all reasonable inferences in favor of the nonmoving party.

*Bechard v. Constanzo,* 810 F.Supp. 579, 581 (D.Vt.1992). The Court shall address each argument in turn.

### 1. *Exhaustion of Administrative Remedies*

■ In general, plaintiffs claiming their rights as secured by the IDEA have been violated must exhaust the administrative remedies provided by the Act prior to bringing an action in federal court. *Heldman v. Sobol,* 962 F.2d 148, 158 (2d Cir. 1992). Defendants allege that Plaintiffs have not exhausted their administrative remedies because they did not seek review by the Secretary of Education or alternatively, request an impartial due process hearing in accordance with 20 U.S.C. § 1415(a)-(e). Hence, Defendants request dismissal of Plaintiffs' complaint.

■ "Exhaustion is not an inflexible rule." *Mrs. W. v. Tirozzi,* 832 F.2d at 756. In fact, there are circumstances in which the exhaustion requirement is not invoked. Exhaustion is required only if a statute mandates an administrative appeal before judicial review can occur. *Coteau Properties Co. v. Department of Interior,* 53 F.3d 1466, 1471 (8th Cir.1995). Moreover, once invoked, the exhaustion requirement may be waived. For example, exhaustion is not required when recourse to administrative remedies would be futile or inadequate. *See Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988); *Garro v. State,* 23 F.3d 734, 737 (2d Cir.1994); *Heldman,* 962 F.2d at 158.

■ First, Defendants argue that Plaintiffs must seek Secretarial review prior to bringing this action. The Court disagrees. The Second Circuit has definitively held that review by the Secretary is not a necessary step prior to commencing a § 1983 action, because there is no statutory directive within the IDEA requiring CRP exhaustion. *Tirozzi,* 832 F.2d at 757–58. While § 1415(f) requires exhaustion of the due process procedures set forth at § 1415(a)-(e), it does not directly, or through its legislative history, mandate exhaustion of possible CRP reme-

---

**6.** In both the original complaint and the amended complaint, Plaintiffs allege violations of 20 U.S.C. § 1412. Section 1412 requires a state to develop and implement a plan for ensuring that disabled children have access to a free appropriate public education.

dies. *Id.; see also Christopher W. v. Portsmouth School Committee,* 877 F.2d 1089, 1095, n. 4 (1st Cir.1989) (exhaustion of administrative remedies under CRP is different from exhaustion of administrative remedies under the due process requirements of 20 U.S.C. § 1415). Furthermore, as a general rule, plaintiffs are not required to exhaust state administrative remedies prior to bringing a § 1983 action, unless otherwise directed by statute. *Quackenbush v. Johnson City School District,* 716 F.2d 141, 148 (2d Cir. 1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984) (citing *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)).

Moreover, requiring exhaustion of the CRP process would yield inadequate results. Thus, if an exhaustion requirement existed, it would be waived. Where, as here, Plaintiffs are challenging the adequacy of Defendants' implementation of the CRP itself and their concomitant failure to ensure conformity with the IDEA by local school districts, the only relief afforded by the Secretary is the withdrawing of federal funds.[7] 20 U.S.C. § 1416; *Tirozzi,* 832 F.2d at 757. As the Second Circuit reasoned, such a remedy is contrary to Plaintiffs' interest, as it would result in the dismantling of the state's procedures, rather than in the proper implementation of them.[8] *Id.*

Finally, the Court notes that appealing to the Secretary was not an option when Plaintiffs filed their original complaint. According to OSEP[9] Memorandum 95–2, 21 IDELR 831 (October 8, 1994), a complainant may request a review by the Secretary only after a final decision on the complaint has been issued. In the case at bar, when the original complaint was filed, the Commissioner had not rendered a decision. Thus, initially, at least, Defendants were directly responsible for Plaintiffs' failure to exhaust administrative remedies.[10]

■ Defendants next argue that Plaintiffs should have exercised their right to the impartial due process hearing and other procedural safeguards, set forth at 20 U.S.C. § 1415(a)-(e). As previously stated, the Act does require exhaustion of these administrative remedies. *See* 20 U.S.C. § 1415(f). Section 1415(f) provides, in pertinent part:

> [B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Other than initially presenting their concerns to the local school district, Plaintiffs did not proceed in accordance with 20 U.S.C. § 1415(b) and (c). However, requiring them to do so, prior to bringing this action, would be an exercise in futility.

Congress has specified instances in which the exhaustion requirement of § 1415(f) is waived. S.Rep. No. 99–112, 99th Cong., 2d Sess. at 2–3, *reprinted in* 1986 U.S.C.C.A.N. 1798, 1799–1800; *see also Tirozzi,* 832 F.2d at 757. These include complaints that:

> (1) it would be futile to use the due process procedures . . .; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the

---

7. Because it is early in the proceedings, the Court is unable to determine the scope of Plaintiffs' claims with precision. To the extent that Plaintiffs may be making the more narrow argument that the specific relief recommended by the Commissioner under the CRP was inadequate, apart from its untimeliness, it is not true that the only relief available is the withholding of federal funds. Rather, the Secretary, in its discretion, may review the substantive decision of the Commissioner. *See* OSEP Memorandum. Nonetheless, as stated *supra,* the Second Circuit has held there is no exhaustion requirement for the CRP.

8. If the Secretary finds a failure to enact and carry out a state plan, as required by § 1412, it shall withhold further payments to the state. 20 U.S.C. § 1416.

9. The Office of Special Education Programs ("OSEP") has been designated by the Secretary of Education to administer the secretarial review process. Thus, it issues policy memorandums, such as the one cited here, to clarify aspects of the process.

10. In *Jose P. v. Ambach,* 669 F.2d 865, 870 (2d Cir.1982), the Second Circuit, denying the necessity of exhaustion, held that plaintiffs should not have to be relegated to state procedures, the inefficacy of which prompted their § 1983 claim.

law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies.... (citations omitted). *Tirozzi*, 832 F.2d at 756. The Court finds that Plaintiffs meet at least two of these criteria.

First, because Plaintiffs allege a shortcoming in the Defendants' carrying out of the procedures mandated by the IDEA and state law, they are not required to pursue administrative remedies. *See Heldman*, 962 F.2d at 159. "The policies underlying the exhaustion requirement do not come into play ... when pursuit of administrative remedies would be futile because the agency ... was acting in violation of state law." *Id.* To hold otherwise would only serve to insulate the state procedures from review—an outcome that would not further the Congressional purpose behind the IDEA. *Id.*

Furthermore, Plaintiffs seek system-wide relief, which a due process hearing officer is unable to provide.[11] *Tirozzi*, 832 F.2d at 758; *cf. Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1305 (9th Cir.1992) (although class relief was sought, only one component of the program at issue was questioned). For the reasons set forth above, Defendants' Motion to Dismiss for failure to exhaust administrative remedies is denied.

### 2. *Private Right of Action*

■ Alternatively, Defendants allege that Plaintiffs cannot proceed under the IDEA or indirectly under § 1983 because there is no private remedy for enforcement of the CRP provisions.[12] *See Beth V. by Yvonne V. v. Carroll*, 876 F.Supp. 1415, 1432 (E.D.Pa. 1995). According to the *Carroll* court, the CRP significantly differs from the due process procedures, guaranteed by the IDEA, with the application of the former being strictly a matter of agency discretion. *Id.* at 1431–34. Because of the flexibility inherent in the CRP, allowing a private remedy for its enforcement would not further the legislative purpose as expressed in § 1412(6). *Id.*

Whether the Court finds the *Carroll* analysis compelling is beside the point, as it is bound by the law of the Second Circuit, including *Tirozzi*. In *Tirozzi*, the Second Circuit permitted the plaintiffs to bring a § 1983 action for alleged violations of the IDEA, including a failure to comply with the CRP.[13] The *Tirozzi* plaintiffs instituted their § 1983 action as a result of perceived inadequacies in Connecticut's treatment of their complaints. For example, the plaintiffs alleged, inter alia, that "the State Board disregarded CRP requirements by not establishing communication with complainants during its investigation and by exceeding the 60 day time limit for such a response." *Id.* at 753. Here, Plaintiffs make similar allegations.

Based on *Tirozzi*,[14] the Court concludes that there is a private remedy for the enforcement of Plaintiffs' CRP claims. Hence, Defendants' Motion to Dismiss on these grounds is denied.

---

11. Again, because the facts before the Court are limited at this stage of the proceedings, the scope of Plaintiffs' claims is unclear. However, no matter how broadly or narrowly the claims may be construed, system-wide relief is sought, thereby meeting the exception. Thus, to the extent that Plaintiffs are asking this Court to review the Commissioner's recommendations about the District on substantive grounds, the exhaustion requirement is waived because they allege systemic problems with the District's implementation of the Act. Alternatively, to the extent that Plaintiffs are claiming that Defendants have not adequately redressed their complaints about the District because of their untimeliness, they are asserting a system-wide problem. Finally, if Plaintiffs are asserting that Defendants have failed to make the District comply with the Commissioner's recommendations, they again are alleging a systemic failure on the part of Defendants.

12. To the extent that Plaintiffs' claims go beyond an alleged failure to carry out the CRP as written, they are not addressed by the Motion to Dismiss.

13. A § 1983 cause of action may be used to remedy both constitutional and federal statutory violations by state agents. *Maine v. Thiboutot*, 448 U.S. 1, 5–6, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). However, § 1983 does not create any new substantive rights, but only enforces those set forth elsewhere. *Tirozzi*, 832 F.2d at 754. Thus, by implication, if a § 1983 claim is allowed, the underlying statute must provide an enforceable right.

14. See also the lower court's decision on remand at 706 F.Supp. 164 (D.Conn.1989).

## III. Conclusion

For the reasons set forth above, the Court hereby ORDERS that Plaintiffs' Motion to Amend their Complaint is GRANTED and Defendants' Motion to Dismiss is DENIED.