**Phyllis CROCE, Plaintiff,**

v.

**V.I.P. REAL ESTATE, INC., Defendant.**

**No. CV–89–2121(ADS).**

United States District Court,
E.D. New York.

March 21, 1992.

Rachel J. Minter, New York City, for plaintiff.

Russo, Fusco, Scano & Scamardella, P.C. by Thomas J. Russo, Staten Island, N.Y., for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This is a motion by the plaintiff to amend her complaint pursuant to Fed.R.Civ.P. 15(a). This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging discrimination on the basis of sex. In January, 1988, the plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC determined that Croce failed to establish a violation of Title VII. Croce then commenced this Title VII action on June 27, 1989. No demand for a jury trial was made since at that time it was the view in this Circuit that Title VII did not encompass the right to a trial by jury. Compensatory damages were sought in the complaint, but that relief was not included in the pretrial order filed on August 23, 1990. Title VII provided only for statutory damages at that time.

The plaintiff now seeks to amend her complaint to include a demand for a jury trial and for compensatory damages under Title VII as amended by the Civil Rights Act of 1991 (Pub.L. No. 102–166) (the "Act"), which was enacted on November 21, 1991. The plaintiff contends that the Act, which amends Title VII to provide the right to a jury trial and compensatory damages, applies retroactively to cases which were pending at the time of the enactment of the Act.

## FACTUAL BACKGROUND

The plaintiff began her employment as a real estate salesperson with the defendant in or about 1982. She eventually advanced to the positions of relocation director, sales manager and trainer. In October of 1984, the plaintiff was employed as Director of Recruitment and Training.

In or about April of 1987, the plaintiff applied for the position of general manager, but was not promoted to that position. The plaintiff alleges that several months later, a less qualified and less experienced male was hired for that position. She also alleges that the defendant's president had remarked to certain other employees that he did not want any women as managers and that he preferred to hire men. The plaintiff concluded that the defendant refused to promote her on the basis of her gender, and as a result, she brought this action.

## AMENDMENT STANDARD

Fed.R.Civ.P. 15(a) provides that "leave [to amend a pleading] shall be freely given

when justice so requires" (*Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 287 [2d Cir.1974]). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial (*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 [1962]; *accord Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F.Supp. 136, 141 [E.D.N.Y.1987]; *Richardson Greenshields Sec., Inc. v. Mui–Hin Lau*, 825 F.2d 647, 653 n. 6 [2d Cir.1987]). The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial (*see Panzella v. Skou*, 471 F.Supp. 303, 305 [S.D.N.Y.1979]), and "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend" (*Lerman v. Chuckleberry Pub., Inc.*, 544 F.Supp. 966, 968 [S.D.N.Y.1982], *rev'd on other grounds sub nom.* 745 F.2d 123 [2d Cir. 1984], *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 [1985]).

Here the issue is whether the proposed amendment is legally sufficient on its face.

### THE LAW

a. *Civil Rights Act of 1991*

■ Section 402 of the Act sets forth its purported effective date:

"(a) In General.—*Except as otherwise provided, this Act and the amendments made by this Act shall take effect upon enactment.*

(b) Certain Disparate Impact Cases.— Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983" (emphasis supplied).

Although subsection (a) is clear on its face, there are two problems which come to mind upon reading this section as a whole. Sub-

section (a) plainly states that the Act is effective on the date of enactment, November 21, 1991. However, subsection (b) specifically provides that the Act shall not apply to certain disparate impact cases antedating the enactment date. This amendment was specifically drafted to avoid the impact of the Act on the litigants in *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (*see* 137 Cong.Rec.S. 15954 [daily ed. Nov. 5, 1991] [Senator Murkowski's letter to Senate colleagues]). The intent was to assure the employer in *Wards Cove* that it would not be subject to the Act's standards governing disparate impact cases (*see* 137 Cong.Rec.S. 15483 [daily ed. Oct. 30, 1991] [statement of Senator Danforth]). The *Wards Cove* litigation lasted approximately twenty years.

The plaintiff argues, and at least one court has pointed out, that if the Act were intended to apply prospectively only, as the defendant contends, subdivision (b) would be entirely divested of any meaning (*Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1304 [N.D.Cal.1992]). This apparent contradiction is again seen in Section 109 of the Act which addresses the protection of extraterritorial employment. Section 109 states that "[t]he Amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." It is reasonable to infer that the language of these sections demonstrates the intent of Congress to ensure that certain cases would be excluded from any possible retroactive effect of the Act.

The second problem caused by the language contained in section 402 arises when attempting to determine the actual effective date of the Act, by means of its legislative history. One court, faced with the problem of divining congressional intent from the Act's legislative history commented that:

"Every federal court in the United States is now faced with the problem which this proposed amendment presents. Why? Because Congress in this new civil rights litigation punted on the question of

whether or not the Act applies retroactively. Many senators and congressmen have deliberately tried to create a 'legislative history' to support their personal views on this question (and) deliberately choose not to include in the statute itself a provision either for retroactive or for prospective-only application" (*King v. Shelby Medical Center,* 779 F.Supp. 157 [N.D.Ala.1991]).

Upon review of excerpts from the Act's legislative history, it is clear that the colloquy concerning retroactivity split along partisan lines (*compare* 137 Cong.Rec.S. 15485 daily ed. Oct. 30, 1991, Senator Kennedy's comments ["It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment. Ordinarily, courts in such cases apply newly enacted procedures and remedies to pending cases"] *with* Senator Danforth's comments 137 Cong.Rec.S. 15,483, daily ed. Oct. 30, 1991, ["Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by *Bowen* and Justice Scalia's concurrence in *Bonjorno*" to apply new law prospectively]).

### b. *The EEOC Policy Guidance Directive*

The EEOC's policy guidance on retroactivity of the Act appeared in the Daily Labor Report on January 2, 1992. That document was issued to provide guidance as to whether the compensatory and punitive damages provisions of the Act apply to conduct occurring and charges pending prior to the "effective date" of the Act. The defendant argues that this guideline is entitled to deference but cites no authority for this proposition.

The plaintiff, on the other hand, argues that the guideline is entitled to no deference since the EEOC is not empowered to promulgate rules or regulations pursuant to Title VII (*see General Elec. v. Gilbert,* 429 U.S. 125, 140–43, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 ["courts properly may accord less weight to such guidelines than to administrative regulations"]; *see e.g.,*

*EEOC v. Arabian American Oil Co.,* —— U.S. ——, ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 [1991] [the Court declines to "defer" to the EEOC construction of Title VII]).

The EEOC concluded that the provisions of the Act are not retroactive, but are to be considered in all cases involving intentional discriminatory conduct occurring on or after the Act's effective date of November 21, 1991.

The EEOC recognized the uncertainty created by Section 402, the legislative history of the Act, United States Supreme Court precedent on the issue of retroactivity, and the cases which reviewed the Act at the time the policy statement was issued. However, the EEOC relied, in particular, on the United States Supreme Court's decision in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), stating that *"Bowen* represents the Supreme Court's most recent holding on this issue [retroactivity], and the Commission will follow the dictates of that case with regard to the retroactivity of damages provisions."

### c. *U.S. Supreme Court Case Law on Retroactivity*

The Supreme Court has decided whether legislation should be applied retroactively in several cases which, according to both parties, control the Court's decision on this motion.

### (1) *Bradley v. School Board of City of Richmond*

In *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) a school desegregation case, the Court enunciated the principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary" (*Bradley,* 416 U.S. at 717, 94 S.Ct. at 2016). This principle derived from an opinion rendered by Chief Judge Marshall in *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801). In the *Schooner Peggy* case, Jus-

tice Marshall noted that an appellate court is bound to apply a law that intervenes and changes the governing rule. He stated "that in mere private cases between individuals, a court will, by retroactive operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws...." (*Schooner Peggy, supra,* at 108).

The Supreme Court expanded the *Schooner Peggy* rule in *Thorpe v. Durham Housing Authority,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). In *Thorpe,* after the plaintiff secured a state court eviction order in connection with a federally funded housing project. This order was affirmed by the North Carolina Supreme Court, and after certiorari had been granted, the Department of Housing and Urban Development issued a circular changing the procedure regarding evictions. The circular did not indicate an effective date for the new procedure. The matter was remanded for consideration of the impact of the circular, but the North Carolina Supreme Court refused to apply the circular and affirmed its prior decision. The United States Supreme Court again granted certiorari, and, following the rule in *Schooner Peggy,* held that the circular must be applied to "any tenant still residing in such housing projects on the date of the decision" (*Thorpe, supra,* at 275, 89 S.Ct. at 522).

The *Bradley* Court construed *Thorpe* to mean that even "where the intervening law does not expressly recite that it is to be applied to pending cases, it is to be given recognition and effect" (*Bradley, supra* 94 S.Ct. at 2018). *Thorpe* and *Bradley* created a presumption that legislation was to apply retroactively. This presumption, however, is limited by two exceptions. The first arises when the there is clear congressional intent that there should not be retroactive application of the law. Significantly, we do not have such clear congressional intent in the Civil Rights Act of 1991.

The second exception arises upon a showing made of "manifest injustice," under the test enunciated in *Bradley.* Building upon *Schooner Peggy,* the *Bradley* Court set forth three factors that should be weighed

before making a finding of "manifest injustice" so as to preclude retroactive application of the law:

1) the nature and identity of the parties

2) the nature of their rights

3) the nature of the impact of the change of law upon those rights (*see Bradley, supra,* at 718, 94 S.Ct. at 2019).

If there is a finding of manifest injustice under *Bradley,* the presumption of retroactive application will be vitiated and the law will not be applied retroactively, assuming there is no clear congressional intent otherwise.

Judge Kram of the Southern District of New York neatly synthesized the three factors in the following balancing test: "Retroactive application of a new law results in manifest injustice when the disappointment of private expectations outweighs the public interest in enforcing a new rule" (*Federal Deposit Ins. Corp. v. Engel,* 746 F.Supp. 1223, 1224 [S.D.N.Y. 1990] [*citing Allied Corp. v. Acme Solvents Reclaiming, Inc.,* 691 F.Supp. 1100, 1112 (N.D.Ill.1988)]).

**(2) Plaintiff's Contentions under *Bradley***

The plaintiff correctly points out that the rule in *Bradley* has often been applied in the Second Circuit (*see e.g., Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 [2d Cir.1987]; *O'Hare v. General Marine Trans. Corp.,* 740 F.2d 160 [2d Cir.1984]; *Leake v. Long Island Jewish Med. Ctr.,* 695 F.Supp. 1414 [E.D.N.Y.1988] *aff'd* 869 F.2d 130 [2d Cir. 1989]).

The plaintiff argues that *Bradley* controls in this Circuit and in view of the factors so enunciated, she maintains that application of the Act's amendments to her case would result in no manifest injustice to the defendant.

The first prong of the *Bradley* test recognizes the differences between litigation brought in the public interest and suits brought solely to vindicate private interests. While the Supreme Court in *Bradley* noted that there might be some injustice in retroactively applying a change in law in a purely private matter, the plaintiff con-

tends that because she seeks vindication under the federal civil rights laws she also raises a matter of substantial public concern. There is precedential support for this position.

In *Mojica v. Gannett Co., Inc.*, 779 F.Supp. 94, 98 (N.D.Ill.1991), one of several recent decisions which permitted an amendment under the Act, the court stated that while "the present case is not one where the plaintiff is acting in the role of a 'private attorney general,' the public component of the dispute between the parties cannot be ignored." (*id.*). Also, in *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1307 [N.D.Cal.1992] the Court stated that "[a]lthough the case involves private parties, it also involves matters of great public concern—remedying race and sex discrimination and promoting equality" (*id.* at 1307).

Under *Bradley*, the second prong of the test concerns whether the change infringes on a litigant's existing rights that have matured or become unconditional. The plaintiff argues that the parties have no right to a bench trial, but do have a "conditional" right to a jury trial. Denying the motion would deprive the plaintiff of this valuable, though newly enacted, right (*see* Fed.R.Civ.P. 38(a); *Mojica, supra* 779 F.Supp. at 98).

Finally, under the third prong of *Bradley*, the plaintiff argues that the change in law has no impact on the above mentioned rights. The plaintiff claims that the compensatory damages and jury trial she seeks impose no new obligations on the defendants. While plaintiff does not specify reasons for this contention, the *Mojica* and *Stender* cases demonstrate that the defendant never had a vested or unconditional right to violate anti-discrimination laws. The defendant's conduct, if established, was illegal before the enactment of the Act, as well as afterward. Acknowledgement of the retroactive application of the Act, which in this case adds only compensatory damages and a jury trial, probably would not have affected the defendant's conduct and therefore does not violate the third prong of the *Bradley* test.

Croce also contends that the law as generally applied in this Circuit supports the retroactive application of the Act. Again, there is case law supporting this argument.

In *Leake v. Long Island Jewish Med. Ctr.*, 695 F.Supp. 1414 (E.D.N.Y.1988) *aff'd* 869 F.2d 130 (2d Cir.1989) Chief Judge Platt applied *Bradley* and held that the Civil Rights Restoration Act of 1987 applied retroactively. The *Leake* opinion was in part premised on another case cited by the plaintiff, *Mrs. W v. Tirozzi*, 832 F.2d 748 (2d Cir.1987). In *Mrs. W*, the court noted that if the purpose of a statute was not to amend, but merely to restore and clarify congressional intent, it can be inferred that the act should be applied retroactively (*Mrs. W, supra* at 754–55).

In addition, Judge Kram of the Southern District relied on *Bradley* in retroactively applying Financial Institutions Reform, Recovery, and Enforcement Act amendments which barred the defendants from asserting an estoppel defense against the FDIC in *Federal Deposit Ins. Corp. v. Engel*, 746 F.Supp. 1223 (S.D.N.Y.1990). The court applied *Bradley* as a balancing test (*see Engel, supra* at 1224), deciding that the public interest outweighed the private expectations of the defendant.

The plaintiff also maintains that on a plain reading of the Act, to give effect to the "carve out" for the disparate impact cases (stemming from the *Wards Cove* litigation) in Section 109 and Section 402, the Act must have been intended to apply retroactively.

(3) *Bowen v. Georgetown University Hospital* and *Kaiser Aluminum & Chemical Corp. v. Bonjorno*

The Supreme Court has used language with respect to the retroactive application of new laws that has become rote, and appears in most decisions which determine that the Act should not apply to pending cases. In *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), it held that the rule making authority of the Secretary of Health and Human Services did not encompass the power to adopt a rule which would

have permitted the government to obtain certain fees already paid to the hospital under a former reimbursement standard. In so doing, the Court stated that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result" (109 S.Ct. at 471). This language has been echoed in other opinions denying retroactive application of the Civil Rights Act of 1991 (see e.g., Khandelwal v. Compuadd Corp., 780 F.Supp. 1077, 1081 [E.D.Va.1992] [citing cases]).

To understand the full import of this language, it must be read in conjunction with the prior Supreme Court decisions in Bradley and Bennett v. New Jersey, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). In Bennett, a case involving the use of Title I grants for educationally deprived students, the Court held that the statute in issue was inapplicable to certain existing claims because the statute altered standards of conduct on which the parties previously would have relied. While the Court referred to the Bradley presumption of applying the law in effect at the time of a decision (id. at 641, 105 S.Ct. at 1561), it further discussed the limitations inherent in this principle, recognizing that the Court will not apply an intervening change in law to a pending action where it infringes upon an unconditional right (see Bennett, supra, at 639, 105 S.Ct. at 1560; Bradley, supra, at 720, 94 S.Ct. at 2020). The Court then linked the application of this limiting element in Bradley to statutes which impact on substantive rights (id.). Therefore, combining the rules in Bradley and Bennett, it appeared there was a general presumption of retroactivity except in the case of legislation affecting unconditional substantive rights. However, it has been argued that the rule in Bowen may have limited this analysis with its statement that retroactivity is not favored.

In Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), a unanimous decision with Justice Scalia concurring, the Court stated through Justice O'Connor, "[i]n apparent tension with the rule articulated in Bradley, supra, is our recent reaffirmation of the generally accepted axiom that '[r]etroactivity is not favored in the law....'" (Bonjorno, supra, 110 S.Ct. at 1577). However, the Bonjorno Court, while reiterating the Bowen language, declined to reconcile the cases because under either view, the congressional intent was clear and it governed. Since the congressional intent was clear in Bonjorno, the Court held that the statute in question, 28 U.S.C. § 1961, would be applied prospectively, without reference to the rule in Bradley.

Justice Scalia was more exhortative, regretting that the cases were not reconciled. He stated that "I would have taken the occasion to admit that rule we expressed in Thorpe and Bradley was wrong, and to reaffirm the clear rule of construction ... [that] the operation of nonpenal legislation is prospective only" (Bonjorno, supra at 1579). However, since the Bonjorno Court did not consider legislation suffering from the facial inconsistency and lack of clear legislative intent present in the Act at issue, its impact is not as great as to whether this Act applies retroactively.

Notwithstanding the differences in the various cases, the defendant argues that since Bonjorno is the most recent pronouncement of the Supreme Court on this issue, its rule must control. Tracking Justice Scalia's concurrence in Bonjorno, the defendant argues that Bonjorno and Bowen establish a presumption of prospective application of nonpenal legislation. The defendant attempts to explain this Circuit's adherence to Bradley by suggesting that the Circuit did not have the benefit of the recent Supreme Court decisions to guide them in cases where the Circuit had followed Bradley. Furthermore, the defendant contends that unlike the Act, the legislation in the other cases merely restored or clarified prior law. The defendant contends that the Act's purpose is clearly to "amend" and therefore it is not susceptible to retroactive construction.

Assuming the defendant is correct in that the other cases in this Circuit decided under Bradley addressed law implemented

to restore or clarify, there is legislative history which indicates that the Act was enacted in part to return the law to pre-*Wards Cove* status (*see* Section 2 of the Act: "the decision of the Supreme Court in [Wards Cove] has weakened the scope and effectiveness of Federal civil rights protections ...") Perhaps even more compelling on this point is the fact that Section 3, describing the purposes of the Act, states that this legislation is designed "to respond to recent decisions of the Supreme Court" (*see also* Martin A. Schwartz & Leon Friedman, *The Retroactivity Battle*, N.Y.L.J., February 19, 1992 at p. 3 [discussing *Stender v. Lucky Stores*, stating that the "purpose of the Civil Rights Act of 1991 was to ... restore the law to its previous posture"] ).

The defendant also argues that even under *Bradley*, the Act should not be applied retroactively. V.I.P. attempts to rebut the presumption of retroactivity set forth in *Bradley*, contending that under its three factor analysis, it would be subject to "manifest injustice" if Croce were permitted to amend her complaint. In that regard, the defendant contends that this suit involves only private litigants and private rights, and consequently the first prong of the *Bradley* test is not met. As discussed above, this part of the test is not superficially satisfied in this cause of action. The interests of the private litigants in this case are merely reflective of a broader national concern, which, upon balance, warrants the application of the Act to existing litigation rather than to a prospective application.

The defendant further maintains that under the second factor of the *Bradley* test, it will be subject to a whole new "class" of damages as opposed to simply just another measure of damages. For example, the defendant points out that in a case relied upon by the plaintiff, the court permitted retroactive application of a certain law to increase the amount of damages available to the plaintiff (*United States v. Pani*, 717 F.Supp. 1013, 1017 [S.D.N.Y.1989] ). The defendant distinguishes *Pani*, noting that a new remedy was not created there, but rather the same remedy was expanded. Here, the defendant contends that the ret-

roactive application of the Act adds a new "type" of damages. However, the defendant has failed to explain how it has a matured or unconditional right to be limited in exposure to only certain types of damages that flow from proscribed conduct. The defendant cites no authority for the proposition that it has a right to be protected from facing such a change in damages as a matter of law.

The defendant also contends that the impact of the changes effected by the Act militates in favor of denying plaintiff's motion to amend under the third prong of *Bradley*. It maintains that the changes brought about by the Act place new obligations on the defendant, such as contending with a jury trial instead of a bench trial and facing a potential award of compensatory damages. This argument misses the point of the *Bradley* analysis. The defendant focuses on the new "remedies" made available by the Act, failing to distinguish between remedies and substantive rights. *Bradley* clearly states that the third step in its analysis addresses "the impact of the change in law on *existing rights*" (emphasis supplied). In the context of such changes in law, the defendant appears to rely upon that portion of the *Bradley* opinion which refers to the imposition of "unanticipated obligations." The defendant argues that the Act's provision for jury trials and compensatory damages has imposed upon it such an unanticipated obligation.

However, in this Court's view, this contention is without merit. This facet of the *Bradley* opinion recognizes the consequences of the advent of an "unexpected obligation;" however, it does not shift the focus of this prong of the *Bradley* test from the impact on "existing rights." The prospect of a defendant facing a jury trial in lieu of a bench trial, or potential compensatory damages where none previously existed, simply does not impact on "existing rights." For example, the defendant had no "right" to engage in the discriminatory conduct alleged in the complaint (*see e.g., Guess v. City of Portage*, Civ. No. 90–276, 1992 WL 8722 [Jan. 14, 1992 N.D.Ind.] ["City never had vested or unconditional

right to discriminate against individuals in the workplace and always was required to follow federal and state law"] ). The alleged conduct at issue was proscribed before the enactment of the Civil Rights Act of 1991, as well as after. Further, the changes brought about by the Act, at least in this case, will not impact on any substantive defenses available to the defendant. The defendant has failed to establish that it has a right to defend its case before a judge rather than a jury (*see Stender, supra*, 780 F.Supp. at 1307). Accordingly, it has failed to demonstrate that the Act impacts on any of its existing rights.

### d. The Civil Rights Act of 1991 as Applied Within the Circuit

Recently, in *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041 (2d Cir.1992), a Title VII action, the Second Circuit noted that it has yet to rule on the applicability of the Civil Rights Act of 1991 to pending cases (*see Song, supra* at 1047–48). However, one case in the Southern District of New York did address a claim made pursuant to the Civil Rights Act of 1991.

In *Sorlucco v. New York City Police Dept.*, 780 F.Supp. 202 (S.D.N.Y.1992), the Southern District of New York considered a gender discrimination case brought under 42 U.S.C. § 1983 and under Title VII. The section 1983 case was tried to a jury and the Title VII claim was to be heard by the court. After a jury returned a verdict for the plaintiff on the section 1983 claim, the plaintiff argued that the Civil Rights Act of 1991 applied retroactively to her jury verdict award, so that certain Title VII liability made available by the Civil Rights Act of 1991 could be imposed on the defendant in addition to the jury's award of damages. In *Sorlucco*, the plaintiff sought the application of the Act after a jury verdict had been rendered in favor of the plaintiff (*Sorlucco, supra*, at 213).

The Court denied the application, in part ruling under *Bradley* and the authority in the Circuit relying on *Bradley* (*e.g., Litton Systems, Inc. v. American Tel. & Tel. Co.*, 746 F.2d 168, 171 [2d Cir.1984] [*Bradley* is "an instruction to appellate courts to adjudicate cases pending on direct appeal according to the law then in effect"] ). The Court noted that the conflict between the *Bradley* case and the *Bowen* case was not resolved by *Bonjorno;* the Court did not attempt to reconcile the cases, since it could rely on *Bradley* exclusively to conclude that the Act would not apply retroactively.

*Sorlucco*, however, is not analogous to the case at issue, since it concerned an attempt to apply the Civil Rights Act of 1991 to a case in which a jury verdict had already been rendered. Clearly, such a situation presents little guidance as to whether the Act should be applied retroactively in this case, which has not yet been tried.

### e. Retroactivity in Other Areas of Law

The defendant V.I.P. makes a plausible argument for limiting *Bradley* in light of *Bowen* and *Bonjorno*. However, the defendant failed to review the cases following *Bradley* in the Second Circuit. Interestingly, none of the cases cited to the Court by the defendants which have held that the Act does not apply to pending cases, has reached that conclusion under a *Bradley* analysis (*see e.g., Van Meter v. Barr*, 778 F.Supp. 83 [D.D.C.1991] [Civil Rights Act of 1991 does not apply retroactively in action against federal employment]; *Hansel v. Public Service Co.*, 778 F.Supp. 1126 [D.Colo.1991] ). The defendant instead argues that the recent trend in the Supreme Court, tending away from retroactive application of intervening changes in the law, militates in favor of denying plaintiff's motion.

However, the defendant failed to address another line of even more recent cases in the Supreme Court on the question of retroactive application of judicial decisions. In *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) the Supreme Court narrowed the test provided by *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) which balanced the equities merits and demerits of applying a new rule of law retroactively. In *Beam*, the

Supreme Court held that it was error to refuse to apply a rule of federal law retroactively after the case announcing the rule had already done so. The Court stated that the rule of law in force at the time a decision is rendered is the rule of law to be applied. Furthermore, the Court stated that this practice is "overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their current understanding of the law" (*Beam supra* 111 S.Ct. at 2443).

Although the issue before the Court is a matter of statutory interpretation in the first instance, and *Beam* is directly applicable to the question of the retroactive application of law by judicial decision, even as applied to the instant matter, *Beam* militates in favor of retroactive application of the Civil Rights Act of 1991.

Moreover, the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), a decision rendered the same day as *Beam*, applied retroactively a statute of limitations rule regarding claims brought under section 10(b) and Rule 10b–5 of the securities laws.

Contrary to the defendant's arguments, the *Beam* and *Lampf* decisions are the Supreme Court's most recent pronouncements on the issue of retroactivity. These cases demonstrate the current Supreme Court's preference for the retroactive application of a new rule of law (*see Hirschfeld v. Total Health Systems, Inc.,* 775 F.Supp. 574 [E.D.N.Y.1991]).

### CONCLUSION

Based on the reported cases in the Second Circuit, the Court concludes that the *Bradley* case continues to provide the controlling analysis in this case.

Furthermore, the Court finds that the legislative history reveals divided political posturing so that there is no clear congressional intent as to the effective date of the Act. As a result of the inconclusive legislative history, and the fact that the language of the Act is subject to varying interpretations, in this Court's view, the *Bradley* analysis should be applied to determine if "manifest injustice" results from the retroactive application of the Act.

 This Court concurs with the analysis of the Southern District in *F.D.I.C. v. Engel, supra,* the Northern District Court of Illinois' decision in *Mojica v. Gannett Co., Inc., supra,* and the Northern District of California's decision in *Stender v. Lucky Stores, Inc., supra,* and concludes that the defendant has failed to demonstrate "manifest injustice" precluding application of the Act to this case. The defendant's natural reluctance to defend against charges of sexual discrimination before a jury and to face a potential award of compensatory damages simply does not outweigh the public interest which is advanced by the terms of the Act.

 Further, based on the analysis in *General Electric v. Gilbert,* 429 U.S. 125, 140–145, 97 S.Ct. 401, 410–413, 50 L.Ed.2d 343 (1976) the Court concludes that while the EEOC policy guideline is entitled to some deference in construing the Act, it is not binding on this Court.

Accordingly, for the reasons set forth above, the Court grants the motion of the plaintiff Phyllis Croce to serve and file the proposed amended complaint, adding the provisions of the Civil Rights Act of 1991. This case is referred back to the assigned Magistrate Judge to provide any additional discovery by the parties required by this amendment.

SO ORDERED.