**Theresa BOSS, Plaintiff–Intervenor,**

**and**

**United States of America, Plaintiff,**

**v.**

**BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT # 6 (HAUPPAUGE), Defendant.**

**No. CV 92–0399.**

United States District Court, E.D. New York.

July 6, 1992.

Goodstein & West, by Robert David Goodstein, New Rochelle, N.Y., for plaintiff-intervenor.

Rains & Pogrebin, P.C. by Mona N. Glanzer, and Michael A. Feldman, Mineola, N.Y., for defendant.

MEMORANDUM AND ORDER

WEXLER, District Judge.

Theresa Boss ("plaintiff-intervenor" or "Boss") filed an initial sex discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on January 28, 1987, and filed an additional complaint with the EEOC on March 28, 1988. Boss alleges that the Board of Education, Union Free School District # 6 ("the Board" or "defendant") violated Title VII of the Civil Rights Act of 1964 by failing to promote her because of her gender, and by

later firing her for complaining about this alleged discrimination. The EEOC referred this matter to the Department of Justice, and the United States filed suit on these charges on January 28, 1992, pursuant to § 706 of Title VII, as amended, 42 U.S.C. § 2000e–5(f). Boss' motion to intervene as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, was granted on March 19, 1992.

The Civil Rights Act of 1991 (the "Act") was signed into law on November 21, 1991. Now before the Court is plaintiff-intervenor's motion to retroactively apply the jury trial and compensatory damages provisions of § 102 of the Act.[1] For the reasons stated below, plaintiff-intervenor's motion is denied.

## I. BACKGROUND

According to plaintiff-intervenor's complaint, on January 1, 1986, defendant hired Boss as a part-time custodian. Boss alleges that on October 15, 1986 and on November 25, 1986, defendant hired less-qualified males to fill two full-time permanent custodian positions. On November 28, 1986, Boss wrote to Eugene Lesserson, President of the Board, to complain of this inequity. She now alleges that in retaliation for that complaint, she was dismissed from her position as a full-time substitute custodian on December 15, 1986.

On January 7, 1987, defendant called Boss back to work on a "less-than-part-time basis" at different work locations, a situation allegedly designed to induce her to quit. On March 1, 1988, she was terminated from that position, allegedly because of the complaint she had filed with the EEOC on January 28, 1987.

Boss further alleges that defendant discriminates against women as a class. She contends that only three of fifty-seven full-time permanent custodians who work for defendant are female, and those three work exclusively in areas of the schools that are restricted to females.

## II. DISCUSSION

### A. The Effective Date Provision of the 1991 Civil Rights Act

Section 402(a) of the Act, the "Effective Date" provision, states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." However, two sections of the Act are explicitly prospective. Section 402(b), sub-headed "Certain Disparate Impact Cases," states: "Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983."

Similarly, § 109(c), which applies Title VII to all United States citizens employed in foreign countries, states that "[t]he amendments made by *this section* shall not apply with respect to conduct occurring before the date of the enactment of this Act." (emphasis added).

■ Plaintiff-intervenor argues that §§ 402(b) and 109(c) can be read only as indicative of congressional intent to extend retroactive application to the remainder of the Act, and that a contrary interpretation would make the effective date provision redundant. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) ("we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law").

However, to date, only two circuit courts of appeal have ruled on the issue of the Act's effective date, and both have found the statutory language unclear. *Vogel v. Cincinnati*, 959 F.2d 594, 597–98 (6th Cir. 1992) (finding that the Act should be applied prospectively); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1376 (8th Cir.1992) (same); *see also Smith v. Petra Cablevision*, 793 F.Supp. 417, 419, (E.D.N.Y.1992) (same); *Croce v. V.I.P. Real Estate, Inc.*, 786 F.Supp. 1141, 1143–

---

**1.** Section 102 amends 42 U.S.C. § 1981 by, *inter alia,* providing for a jury trial and allowing plaintiffs to seek compensatory damages of up to $300,000.

44 (E.D.N.Y.1992) (finding that the Act should be applied retroactively).

Clearly, Congress is able to construct explicitly retroactive legislation when it so desires. In fact, § 15(a)(4) of the Civil Rights Act of 1990, an earlier version of the Act, stated that the provisions for jury trials, compensatory and punitive damages "shall apply to all proceedings pending on or commenced after the date of the enactment of this Act." That bill, however, was vetoed by President Bush, in part because of these "unfair retroactivity rules." 136 Cong.Rec. S16,562 (daily ed. Oct. 24, 1990).

### B. Congressional Intent to Overturn Supreme Court Decisions

Section 3 of the Act states that it was designed to "respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes...." Pub.L. No. 102–166, § 3(4).[2] However, although the Act's general purpose is to restore the law to its state prior to these Supreme Court decisions, § 102's provisions are not restorative, but provide new remedies. Moreover, although plaintiff-intervenor may be correct in stating that it will be years before cases are affected by the Act if it is applied prospectively, any deterrent effect of the new provisions will presumably have an immediate effect on conduct.

■ Furthermore, "clear congressional intent to apply a statute retroactively cannot be derived 'solely from the circumstance that Congress acted to amend existing law in response to a Supreme Court opinion.'" Fray, 960 F.2d at 1377 (quoting DeVargas v. Mason and Hanger–Silas Mason Co., 911 F.2d 1377, 1387 (10th Cir.

1990), cert. denied, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991)). Because the language in the Act's effective date provision is ambiguous, and the congressional intent as to the Act's effective date cannot be discerned merely by the fact that Congress sought to modify or overturn certain Supreme Court decisions, this Court must look to the legislative history for guidance.

### C. Legislative History of the Civil Rights Act of 1991

The legislative history of the Act indicates no clear congressional intent regarding its effective date other than to hold together a fragile bipartisan coalition by sending ambiguous language to the President.[3] The issue of retroactivity was left to the courts, with each side of the debate gambling that the judiciary would vindicate its position. Fray, 960 F.2d at 1377; Petra Cablevision, 793 F.Supp. at 424.

■ Section 402(b), which was introduced by Senator Murkowski, was added to provide assurance to the Wards Cove Packing Company that § 103 of the Act would not be applied retroactively to their nearly-two-decade-old litigation. See 137 Cong. Rec. S15,954 (daily ed. Nov. 5, 1991) (Senator Murkowski's letter to Senate colleagues). As to § 109(c), there was no floor debate, so it can only be assumed that it was an example of retroactivity opponents " 'hedg[ing] their bets.' " Fray, 960 F.2d at 1377.

Indeed, members on both sides of the retroactivity debate recognized that the issue would be resolved by the courts, although they disagreed as to whether the judiciary would apply the rule in Bowen v. Georgetown University Hosp., 488 U.S.

**2.** As noted in Petra Cablevision, 793 F.Supp. at 431, the Act modifies or overturns the following Supreme Court decisions: West Virginia Univ. Hosp. v. Casey, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); EEOC v. Aramco, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Martin v. Wilks, 490

U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); Library of Congress v. Shaw, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

**3.** Plaintiff-intervenor notes that congressional opponents of retroactivity proposed language supporting prospective-only application, which was rejected in the final version of the bill. Defendant points to the similar failure of retroactive language to survive in the compromise bill. See e.g., 137 Cong.Rec. H3,908 (daily ed. June 4, 1991); 137 Cong.Rec. S15,503–12 (daily ed. Oct. 30, 1991).

204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (maintaining a presumption against retroactive application of statutes), or in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (maintaining a presumption in favor of retroactivity).

An interpretive memorandum by Senator Danforth noted that the sponsors disapprove of *Bradley.* "Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by *Bowen* and Justice Scalia's concurrence on *Bonjorno.*" This memorandum also cautioned that § 402(b) "should not be read in derogation of the sponsors' intention not to provide for retroactive effect or application as expressed in subsection 22(a) of the bill." 137 Cong.Rec. S15,-483 (daily ed. Oct. 30, 1991).

Although Senator Kennedy, another sponsor, stated that "[c]ourts frequently apply newly enacted procedures and remedies to pending cases," 137 Cong.Rec. S15,-485 (daily ed. Oct. 30, 1991), he admitted that "[w]ith the exception of the Murkowski amendment, it will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." *Id.*

This Court, agreeing with the *Fray* and *Petra Cablevision* courts, finds that the only clearly discernible congressional intent regarding the Act's prospective or retrospective application is that Congress was willing to leave the issue up to the courts.

D. *The EEOC Interpretation of The Civil Rights Act of 1991*

Congress may reserve areas, explicitly or implicitly, for an agency to fill. Here, because there was no clear legislative intent or directing language, the delegation to the EEOC was implicit. On December 27, 1991, the EEOC, the agency responsible for enforcing the Title VII provisions of the Act, announced that it will apply the Act only to cases arising after its effective date. *See* 60 U.S.L.W. 2418 (Jan. 7, 1992).

The Supreme Court has ruled that the EEOC's interpretation of Title VII need not be the best one, but that its "interpretation of ambiguous language need only be reasonable to be entitled to deference." *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988); *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984) ("[w]hen a challenge to an agency construction of a statutory provision ... really centers on the wisdom of the agency's policy ... the challenge must fall"). This Court finds that the EEOC's interpretation was reasonable "[i]n light of the ambiguity of the statute on its face and the lack of congressional guidance." *Vogel,* 959 F.2d at 598; *see Petra Cablevision,* at 424–25, 1992 WL 108356 at \*7, 1992 U.S.Dist.Lexis 7618 at \*7.

E. *Bradley and Bowen on Retroactivity*

The Supreme Court has left unresolved the question of whether legislation should apply retroactively or only prospectively. In *Bradley,* the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. However, fourteen years later the Supreme Court stated that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471.

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), the Supreme Court recognized the "apparent tension" between these divergent lines of authority. Although Justice Scalia, in a concurring opinion, invited the majority to settle this issue, the *Bonjorno* court declined to do so because under either *Bradley* or *Bowen,* "where the congressional intent is clear, it governs." *Bonjorno,* 494 U.S. at 837, 110 S.Ct. at 1577.

### 1. Policy Arguments Favor Prospective Application of Statutes

In the instant case, given the ambiguity of the language in the Act's effective date provision and the lack of direction from the legislative history (and notwithstanding the deference due to the EEOC decision), this Court must choose between the retroactive presumption rule in *Bradley* and the prospective presumption rule in *Bowen*.

Plaintiff-intervenor first argues that *Bradley* is the better rule because it allows the courts greater flexibility. The Court notes, however, that the *Bowen* rule in no way prevents Congress from enacting retroactive legislation so long as it uses clear language to that effect.

Furthermore, if legislation were applied retroactively, the strange result could arise that two instances of identical and contemporaneous conduct might be adjudicated differently depending on when the suit was brought. *See Bonjorno*, 494 U.S. at 854, 110 S.Ct. at 1586 (Scalia, J., concurring). Defendant argues that such an injustice would be done in the instant case if the Act's remedies were applied retroactively; plaintiff-intervenor would be rewarded for the four-year delay in bringing her case. Moreover, such a result would, of necessity, be "manifestly unjust." As Justice Scalia observed, when an act is judged by a legal rule not in effect when the conduct occurred, "one is not really talking about 'justice' at all, but about mercy, or compassion, or social utility, or whatever other policy motivation might make one favor a particular result." *Bonjorno*, 494 U.S. at 857, 110 S.Ct. at 1587 (Scalia, J., concurring).

### 2. Legal Arguments Favor Prospective Application of Statutes

This Court finds that: (1) the *Bradley* presumption in favor of retroactivity is rooted in misinterpretations of precedent; (2) any application of *Bradley* to the Act would fall under its "manifest injustice" exception; and (3) the Second Circuit, and a majority of other circuit courts and district courts, have supported *Bowen*.

#### a. *Bradley is Rooted in Misinterpretations of Precedent*

In *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), on which *Bradley* heavily relied, the Supreme Court disturbed the centuries-old doctrine of prospective application of legislation.[4] In *Bonjorno*, Justice Scalia argues persuasively that *Thorpe* was based upon a misinterpretation of *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). *Bonjorno*, 494 U.S. at 857, 110 S.Ct. at 1587 (Scalia, J., concurring).

The rule laid out in *Schooner Peggy* was that "if, subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed...." *Schooner Peggy*, 5 U.S. at 110. Justice Scalia observed that this meant only that "[i]f retroactive effect is explicit, retroactive effect is accorded." *Bonjorno*, 494 U.S. at 847, 110 S.Ct. at 1582. However, *Thorpe* interpreted *Schooner Peggy* to stand for the proposition that "an appellate court must apply the law in effect at the time it renders its decision," *Thorpe*, 393 U.S. at 281, 89 S.Ct. at 526, and *Bradley* further deviated from *Schooner Peggy* by holding that "a change in the law is to be given effect in a pending case." *Bradley*, 416 U.S. at 715, 94 S.Ct. at 2018.

Justice Scalia also noted that none of the cases cited in *Thorpe* and *Bradley* with a non-criminal statute at issue "even *purports* to be applying a presumption of retroactivity." *Bonjorno*, 494 U.S. at 849–50, 110 S.Ct. at 1583–84 (Scalia, J., concurring).

#### b. *Applying the Bradley Rule Would Result in "Manifest Injustice"*

Assuming, *arguendo*, that *Bradley* is applicable to the instant case, it states that a statute should not be applied retroactively

---

**4.** The principle that conduct should be assessed under the law in effect at the time of that conduct found expression in ancient Greece, Rome, the English common law, and the Code Napoleon. *See Bonjorno*, 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring).

when "manifest injustice" would result. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. In order to avoid such injustice, it suggests that courts should consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact on the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

The first prong of the *Bradley* test recognizes the distinction between litigation brought in the public interest and suits brought solely to vindicate private concerns. *See Croce*, 786 F.Supp. at 1145. Boss argues that Title VII cases such as the instant one are, by their nature, of "great national concern" and therefore merit a presumption of retroactivity. *See Bradley*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20. This Court concedes that the underlying issues involved in Title VII cases are of great national concern. However, the question of whether § 102's jury trial and compensatory damages provisions should be granted on a retroactive or prospective basis is of great concern only to the parties involved.

Defendant notes that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). Boss, however, asserts that defendant would not have altered its conduct either in reliance on the previous law, or with knowledge of the new law. Therefore, she contends, the changes in the Act are not substantive. *See* Memorandum of Law of Plaintiff–Intervenor Theresa Boss at 24–25.

Assuming, *arguendo*, that plaintiff-intervenor's contention is correct, then applying the remedies in § 102 on a retroactive basis would do no more than grant her the right to a jury trial and the possibility of receiving up to $300,000 in additional damages. This is hardly a matter of national concern and consequently there is no need to apply these remedies retroactively. *See Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019 (there may be injustice in retroactively applying a

change in law in cases involving private matters). If, on the other hand, the Act's new provisions would have a deterrent effect on defendant, then the change in law would be substantive and it would be unfair to penalize defendant for conduct it would not have committed had the Act been in effect at the time. *See Bennett,* 470 U.S. at 639–40, 105 S.Ct. at 1559–60.

Plaintiff-intervenor also asserts that because the Act does not render previously lawful conduct illegal, applying the provisions of § 102 of the Act to this case would not impact on "substantive rights and liabilities." *See United States v. Security Indus. Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). This Court finds, however, that "[a] right to seek compensatory damages in a jury trial . . . is a major substantive provision." *Van Meter v. Barr,* 778 F.Supp. 83, 84 (D.D.C.1991); *see Vogel,* 959 F.2d at 598. ("*Bradley* should be read narrowly and should not be applied in contexts where 'substantive rights and liabilities', broadly construed, would be affected"). Therefore, to the extent that § 102's provisions are substantive, their retroactive application is barred by *Bennett.*

c. *The Second Circuit and Most Authority Support Bowen*

Relying on *Gonzalez v. Home Ins. Co.,* 909 F.2d 716 (2d Cir.1990), plaintiff-intervenor contends that the Second Circuit has supported a presumption of retroactivity. However, *Gonzalez* concerns the retroactivity of judicial decisions rather than legislative enactments. *Id.* at 723. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *Security Indus. Bank,* 459 U.S. at 79, 103 S.Ct. at 413 (citations omitted); *see Bennett,* 470 U.S. at 639, 105 S.Ct. at 1560 (same).[5]

Moreover, in *Lehman v. Burnley,* 866 F.2d 33 (2d Cir.1989), the Second Circuit found retroactive application of a statute

---

**5.** *Croce* states that *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), demonstrate

the current Supreme Court's preference for retroactive application of a new rule of law. *Croce,* 786 F.Supp. at 1150. However, like *Gonzalez, Lampf* and *Beam* both concerned retroac-

inappropriate. *Id.* at 37 (citing *Bowen*); *see also Leland v. Federal Ins. Admin.,* 934 F.2d 524, 528 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991) (same); *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 963–64 (D.C.Cir.1990) (same); *Petra Cablevision,* 793 F.Supp. at 430–31 (a majority of circuit courts and district courts have supported *Bowen* ).

Accordingly, this Court holds that the jury trial and compensatory damages provisions of § 102 of the Civil Rights Act of 1991 should be applied only prospectively.

### III.  CONCLUSION

■■ Notwithstanding the aforementioned holding, this Court recognizes that many district courts have held that the provisions in § 102 of the Act should be applied retroactively and that this issue has not yet been decided by the Supreme Court or the Second Circuit. Accordingly, for the purpose of judicial economy, this Court will contemporaneously conduct both a bench trial and a jury trial. At the conclusion of the trial, (1) the Court will decide the case from the bench, applying the law in effect before the enactment of the Civil Rights Act of 1991; (2) the jury will be instructed that if it finds for plaintiff, it may award compensatory damages not greater than $300,000, as provided in § 102 of the Act; and (3) the Court's opinion will be sealed until the jury's decision is announced. In the event that the Second Circuit or the Supreme Court rules that the remedies in § 102 of the Act should have been applied to this case, there will then be no need to remand the case for a new trial; instead, the jury's verdict and award, if any, can then be given full effect.

SO ORDERED.

tive application of judicial decisions. *Lampf,* 111 S.Ct. at 2779–80; *Beam,* 111 S.Ct. at 2443.

*Croce* also cites *Mrs. W. v. Tirozzi,* 832 F.2d 748 (2d Cir.1987) and *Leake v. Long Island Jewish Medical Center,* 695 F.Supp. 1414 (E.D.N.Y. 1988), *aff'd,* 869 F.2d 130 (2d Cir.1989). *Tirozzi* involved the retroactive application of "restora-

tive" legislation. Courts have been willing to apply such clarifications of original statutes retroactively. *See Tirozzi,* 832 F.2d at 755. In *Leake,* the court was able to find clear congressional intent for retroactive application. *Leake,* 695 F.Supp. at 1416–17.